RED STAR MILLING CO. *v.* MOSES *et al.*

(Division A. Oct. 5, 1936.)

[169 So. 785. No. 32246.]

Robertson & Robertson, and Chas. S. Campbell, all of Jackson, and Campbell & Campbell, of Yazoo City, for appellant.

**J. G. Holmes,** of Yazoo City, for appellees.

**Smith, C. J.**, delivered the opinion of the court.

This is an appeal from a judgment denying the appellant, the plaintiff in the court below, a recovery for an alleged breach of a contract by which the appellees agreed to purchase flour from it. The appellant's complaint is that the court below erred in not directing the jury to return a verdict for it.

The evidence, in substance, is as follows: The appellees, Lillie and Abraham Moses, doing business at Yazoo City, Miss., under the name of the Mississippi Grocery Company, are wholesale merchants selling to retail dealers only. The appellant is domiciled at Wichita, Kan., and is there engaged in the manufacture and sale of flour to dealers. On February 12, 1934, the Mississippi Grocery Company entered into a written contract with the appellant for the purchase and immediate delivery to it of two hundred and fifty barrels of Keno flour, and on the same day entered into another contract with the appellant for the purchase of three thousand barrels of Keno flour for shipment on or before May 20, 1934, the buyer "to furnish the seller, at least fourteen days before the time for shipment, complete shipping instructions." Each of these contracts contain the stipulation "Satisfaction guaranteed," and provide that bills of lading for the flour, when shipped, should be attached to a draft and forwarded to the Bank of Yazoo City for collection. The deliveries hereinafter referred to were dealt with in this manner, and the Mis-

sissippi Grocery Company, on payment of the draft, received the bill of lading, and the railroad company, on presentation thereof, delivered the flour to it. Two carloads of flour, together containing five hundred barrels of flour, were shipped to the Mississippi Grocery Company under these contracts shortly after their execution, and no complaint is made of the quality thereof. Another carload was delivered on March 28th, and another on April 2nd, together also containing five hundred barrels of flour. After part of the flour contained in the last two carloads thereof was distributed to the customers of the Mississippi Grocery Company, it was ascertained by them to be "black, lumpy and gummy," and unfit for human consumption, at least, the jury were authorized to so find. The Mississippi Grocery Company credited its customers with the price of the flour, and, by common carrier, forwarded a sample of it to the appellant, but it does not appear whether the appellant received this sample, or, if so, what inspection, if any, was made of it.

Several letters then passed between the parties, from which it appears that the appellant did not admit that any of the flour delivered was defective, and would continue to deliver flour of the same quality as that previously delivered, which deliveries the appellees indicated they would decline to receive. This suit was then begun.

The question for decision is: Did the appellees have the right to decline to receive further delieveries of the flour? There is some confusion in the cases as to whether a buyer, in a contract for the purchase of goods to be delievered in installments, who has accepted an installment defective in quality may refuse to accept future installments, but the conflicts therein are, probably, more apparent than real.

According to the weight of authority, the acceptance by the buyer of an installment defective in quality is not, of itself, alone, equivalent to an assent to receive subsequent installments of "similarly inferior goods."

2nd Williston on Contracts, Rev. Ed., section 741. But this is not the exact question here.

The appellees could not receive the flour until they had paid for it, and could not inspect it, for defects, without breaking the sacks containing it. But, aside from that, when advised of the defects in the flour, the appellant, as hereinbefore set forth, indicated to the appellees that it considered the flour delievered to be of the required quality, and would continue to deliver flour of the same quality. This being true, were the appellees justified in declining to receive future deliveries? Both reason and high authority answer this question in the affirmative. 24 R. C. L., p. 286, sec. 564; 2nd Williston on Sales, sec. 467D; McDonald v. Kansas City Bolt Co. (C. C. A.), 149 F. 360, 8 L. R. A. (N. S.) 1110. Others appear in cases cited in 55 C. J. 268 and 269, and annotations of cases in 8 L. R. A. (N. S.) 1110, 38 L. R. A. (N. S.) 539, and 29 A. L. R. 1517.

This rule was applied by the Supreme Court of the United States, as to defects in quantity, in Norrington v. Wright, 115 U. S. 188, 6 S. Ct. 12, 29 L. Ed. 366. To so hold is also in accord with modern legislative thought, as evidenced by subsection 2 of section 45 of the Uniform Sales Act.

We are, therefore, of the opinion and hold that the appellees were justified in declining to receive future deliveries of the flour, and that the court below committed no error in refusing to direct a verdict for the appellant.

Affirmed.